Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

Civil Case No.:

**07– cv- 1171**
(ARR) (Mj.DB)

----------------------------------------------------------------x

Civil rights Injury related to the Sherman Anti-trust Act and RICO Act matter of: JAH THOMAS and BASIL GUILAVIGUI partners in the FULTON at ALBANY COOPERATIVE MARKET (a.k.a. Bedford Stuyvesant Cooperative market) at 17 Albany Avenue Brooklyn 11216 with customer CHRISTOPHER EARL STRUNK and those similarly situated,

**Plaintiffs,**

**AMENDED COMPLAINT**

(Jury Demand)

-against-

FEDERAL RESERVE BANK OF NEW YORK (FRBNY), ELIZABETH A. RODRIGUEZ Individually and as Vice President of FRBNY, ROCKEFELLER FOUNDATION by Vice President DARREN WALKER, GOLDMAN SACHS URBAN FUND (GSUF), RICHARD ROBERTS individually and Director of the GSUF, FOREST CITY RATNER (FCR), BRUCE RATNER individually and as President of FCR, UNITED STATES HOUSING AND URBAN DEVELOPMENT (HUD) by its Secretary, ANDREW CUOMO Individually, as HUD Secretary and NYS Attorney General, BROOKLYN CHAMBER OF COMMERCE by its President KENNETH ADAMS, MARTY MARKOWITZ individually and as Brooklyn Borough President, THE CITY OF NEW YORK (NYC) and by MICHAEL BLOOMBERG Individually and as NYC Mayor; NYC DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT (HPD) by its Commissioner, BROOKLYN COMMUNITY BOARD #3 (BCB #3) and its Co Chairman and Managing Director; BEDFORD-STUYVESANT RESTORATION CORP. (BSRC), ALBANY DECATUR REDEVELOPMENT COMPANY (ADRC), COLVIN GRANNUM individually and as President of BSRC and ADRC, and along with various unknown JOHN AND JANE DOES as agents of above Defendants' Enterprise

**Defendants,**

-------------------------------------------------------------------x

RECEIVED
MAY 0 1 2007
PRO SE OFFICE

Pursuant to the 17 April 2007 Order to file an Amended Complaint by 1 May 2007, Plaintiffs Jah Thomas and Basil Guilavigui individually and as partners in the FULTON at ALBANY COOPERATIVE MARKET ("FACM") (a.k.a. Bedford Stuyvesant Cooperative market) at 17 Albany Avenue Brooklyn 11216, pro se without either being an attorney, hereby add our customer CHRISTOPHER EARL STRUNK pro se without being an attorney representative of those similarly situated, and that together we complain of Defendants in the caption individually and as an enterprise defined in the RICO Act 18 USC 1961 thru 1964, and according to Federal Rules for Civil Procedure (FRCvP) we set forth counts against individual Defendants as follows:

Amended Complaint page 1 of 43

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

## COUNT ONE
**NYC and its agents deny a republican form of government as a substantive dues process and equal protection matter of citizen sovereignty right to liberty, speech, association, petition, suffrage, per 14th and 15th Amendment and State Constitution**

1. Plaintiffs Thomas and Strunk are registered voters eligible to vote within a New York State (NYS) Election Law (EL) §4-100 Election District within a respective Brooklyn Community Board within the city of New York Borough of Brooklyn.

2. That Plaintiffs Thomas and Strunk individually own a proprietary vote property, in privity with the respective voters of each Brooklyn Community Board within Brooklyn;

3. Plaintiff Guilavigui is a resident alien desiring to become a naturalized citizen effected by any majority vote;

4. All Plaintiffs along with those similarly situated liberty and rights are effected by lack of elected representation at the respective Brooklyn Community Board of Residence;

5. That the Court has original jurisdiction per 28 USC §1331 pursuant the 1965 Voting Rights Act 42 USC §1973, 42 USC §1983, §1985(3) and §1986 complaint of defendants:

6. **The City of New York** (NYC) is a municipal subdivision of the State of New York with a duly elected City Council with 51 members too numerous to name herein represented by Corporation Counsel Michael Cardozo at 100 Church Street 4th Floor NY NY 10007,

7. The prior NYC Mayors including **Michael Bloomberg** the current duly elected NYC Mayor chief executive of NYC and individually located at One Center Street NY NY 10007, and

8. **Marty Markowitz** duly elected Borough President of Brooklyn and individually located at Brooklyn Borough Hall 209 Joralemon Street Brooklyn NY 11201

9. **Brooklyn Community Board #3**, is an association represented by its co-chairman and district manager and members appointed by President Markowitz and Mayor Bloomberg located at 1368 Fulton Street 2nd Floor Brooklyn New York 11216, and is representative of

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

the class of all eighteen (18) Brooklyn Community Boards without elected representatives.

10. That NYC, the Mayor, City Council, Brooklyn Borough President and their agent BCB #3 as similarly situated Brooklyn Community Boards collectively known as the *NYC Defendant*.

11. NYC Defendant deny that partly because of the character of federalism and partly because of the traditions of an agrarian society, the basic pattern of political organization in the United States is territorial, rather than economic or ethnic groups, social classes, or the like.

12. NYC Defendant deny the nation is divided into states, and the states are divided into counties; divided into townships or cities or special districts, and the whole country is divided into election districts of varying sizes ranging from House districts to precincts.

13. NYC Defendant deny the people who are sovereign per se and their interests gain political identity and formal representation in the councils of government through their location in particular places and their ability to capture political control of territorial political units. [1]

14. NYC Defendant deny that suburban fragmentation of our metropolitan areas can be understood, in one sense, as an attempt by citizens to get back to smaller units of local government and enjoy, once again, the fruits of direct observation of and participation in local government, and we may indeed long for meaningful local participation, so the argument goes, on a more accessible scale, and we will migrate, if necessary, to get it.

15. NY Defendant deny in addition to its more accessible scope and size, the typical American

---

[1] *Perspectives in Political Science* - Spring 2004 Volume 33 Number 2 "The Structure of American Local Government" by Brian P. Janiskee, PhD. who is an assistant professor of political science at California State University, San Bernadino, and a fellow at the Claremont Institute. He has written several journal articles on local government, crime policy, and presidential elections and is the co-author of Democracy in California and the co-editor of The California Republic. COPYRIGHT INFORMATION: TITLE: The Structure of American Local Government SOURCE: Perspectives on Political Science 33 no2 Spr 2004 PAGE(S): 89-97; WN: 0410801234004 - The magazine publisher is the copyright holder of this article and it is reproduced with permission. Further reproduction of this article in violation of the copyright is prohibited. To contact the publisher: http://www.heldref.org/ Copyright 1982-2004 The H.W. Wilson Company. All rights reserved.

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

community, unlike its European counterpart, is built according to a grid, and interlocking rectangles of major thoroughfares allow for a geographic accessibility that complements political accessibility.

16. NYC Defendant deny the physical pattern of American communities is not an accident, and a political attachment to a community that is within the common-sense conceptual grasp of a citizen is the core of *polycentrism* versus that of *monocentrism* [2];

---

[2]  Polycentrism - Of the two main schools of thought regarding the question of the American metropolis, the polycentrists are the second main school of thought with regard to the issue of metropolitan local government (E. Ostrom 2000, 34-35). From the polycentric perspective, local fragmentation is beneficial to the health of the American regime (Bish 1971; Elazar 1987; V. Ostrol 1995; E. Ostrom 2000; Ostrom, Bish, and Ostrom 1988; Tiebout 1956; Warren 1964). Instead of forcing independent local units to accept the imposition of a stifling hierarchy, local governments should be allowed to compete with one another. Governments that provide more desirable levels of services and taxation will attract residents. Local government consolidation, so the argument goes, will only make a bad situation worse. Consolidation will create a diseconomy of scale. Charles Tiebout (1956) wrote the seminal polycentric analysis of local government fragmentation. Tiebout offers a solution for the problem of local government that is based on free market economics. He constructed a rational choice model where citizen (that is, consumer) preferences for certain levels of municipal taxes and expenditures could be revealed under specific conditions. A satisfactory level of tax and expenditure levels, thus, could be established by governments that chose to respond to these preferences (Tiebout 1956, 416). Tiebout's theoretical assumptions are as follows: (1) Consumer voters are mobile (they may move out of a jurisdiction); (2) Consumer voters have full knowledge of taxing and spending levels within various local jurisdictions; (3) There are a large number of local jurisdictions; and (4) Existing jurisdictions have autonomous power to define their optimum size (limits to size may include geographic considerations) (1956, 418).

Monocentrism – Of the two main schools of thought that have developed regarding the question of the American metropolis, there are the monocentrists (E. Ostrom 2000, 34). Monocentrists look with disfavor on local government fragmentation (Beckman 1966; J. Bollens 1957; S. Bollens 1986; Burns 1994; Dagger 1984 ; Goodnow 1902; Harrigan 1981; Maxey 1922; Reed 1930, 1949; Rusk 1993). In their assessment, the uneven allocation of resources, public service disparities, diseconomies of scale, and excessive externalities that exist in the modern metropolis can best be remedied by consolidating the various local entities into larger regional governments. Monocentrists hold that the fragmentation of power in metropolitan areas makes it difficult to develop solutions to these problems. According to this perspective, the geographic boundaries of the separate units of metropolitan local governments are superimposed on what essentially are a single community. Chester Maxey, an early monocentrist, claimed that the American metropolitan area is "a house divided against itself" (1922, 229). The single community requires a single government. Such regional government presumably would provide better economies of scale, geographic adequacy, equitable revenue collection and distribution, and more public accountability for a wide range of government functions (Beckman 1966). Regional government would be more efficient, according to monocentrists.

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

17. NYC Defendant in 2002 aided and abetted the state subdivision of NYC to have 26 of 62 State Senators that violates State Constitution Article III Section 4 that no state sub-division shall have more than 1/3 of the senators- NYC home-rule size may not have more than 20.

18. NYC Defendant maliciously fails to provide the People a citywide representative to defend their rights in Court.

19. NYC Defendant and their agents act in bad-faith with the State Constitution and Laws to deny the guarantee of individual sovereignty for each good citizen resident in a local government subdivision, and

20. That NYC under color of EL §2-110 deny EL §4-100 Election District competition for leadership equal with County Committee creation under EL §2-104, NYC Defendant denies competition between and within bi-partisan state parties at municipal level governance.

21. NYC Defendant raises a bar on bi-partisan competition required by the State Constitution and laws for the election in each EL §4-100 Election District of at least two elected leaders within the 60 to 90 EDs of each Assembly District ("AD") for each state party.

22. That in NYC state party leadership elections for the municipal committee only apply to that of Assembly and Assistant Assembly District leaders, and the super majority are appointed

23. That NYC Defendant doesn't enforce biannual election for many years that interferes with individual sovereignty afforded by gaining election leadership position at the election district level for county committee membership other than by appointment over the elected 25%.

24. EL §2-110 is facially unconstitutional in AD leader appointment for less than 66% elected

25. That in NYC without bi-partisan elections held at the Election District level for bi-partisan county committee membership the questionable Borough leaders appoint a sinecure quasi Borough committee membership that by its very nature must be only a NYC home-rule party

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

26. NYC Defendant deny the people sovereignty home-rule within Brooklyn under the NYC

Charter that is facially unconstitutional unless Brooklyn is separated from other boroughs

27. NYC is a covered venue under the 1965 VRA against violation of the 10% diminimus test.

28. The People of each City Councilman District in NYC have only one duly elected

representative to the City Council for a total of 51 members, effected without competition

below at the election district level except within the context of a local community board

29. The People of each Assembly District in NYC have only one duly elected representative in

the State Assembly that total 66 members from NYC of 150 statewide, without competition

at the EL §4-100 Election District level that per EL: §2-110 has lead to corruption and graft.

30. In NYC there is a revolving door for members of the City Council and State Legislature;

31. NYC Defendant are facilitated by the 1965 political redistricting done under _WMCA, Inc. v._

_Lomenzo_, 377 U.S. 633 under the rouse of _Reynolds v Sims_, 377 U.S. 577 (1964) [3]

32. NYC Defendant aides and abets a Monocentric single center / top-down / vertical monopoly

---

[3]  Columbia Univ. Law Review June 1965 Vol. 65 pages 21 thru 54 "_The Effect of the Federal Reapportionment Decisions on Counties and Other Forms of Municipal Government_" by then *Professor of Law, Columbia University, A.B., Brooklyn College, 1943; L.L.B., Columbia University, 1948.
    Professor Weinstein, currently on leave from Columbia Law School, is serving as County Attorney for Nassau County, New York.
1.  In Reynolds v. Sims, 377 U.S. 533 (1964) voters and taxpayers of the two urban Alabama counties challenged the appointment of both houses of the state legislature (constituencies of state senators varied from 15,417 to 634,864; constituencies of state representatives ranged from 6,731 to 104,767) and a proposed modification that would have substantially ameliorated the disproportions in only the Alabama House. The Supreme Court held both the then current apportionment and the new plan invalid, and sustained the temporary reapportionment that had been ordered by the district court. See Lucas v. Forty-Fourth Gen. Assembly, 377 U.S. 713 (1964) (Colo.); Roman v. Sincock, 377 U.S. 695 (1964) (Del.); Davis v. Mann, 377 U.S. 676 (1964) (Va.); Maryland Comm. For Fair Representation v. Tawes, 377 U.S. 656 (1964); WMCA, Inc. v. Lomenzo, 377 U.S. 633 (1964) (N.Y.).
2.  See Weinstein, _Some Aspects of Reapportionment The Nassau Law_, April 1964, pp. 6-17 for comments favoring the Supreme Court decisions. The article emphasizes the practical effects that debasing suburban residents' voting rights has on the kind of aid their counties receive from state government. These views as well as the views stated  in this article are, of course, expressed in the author's personal and not official capacity.
3.  A "local government:" is defined in New York as including "a county, city, town or village." N.Y. Const. Art. IX, §3(d) (2); N.Y. Municipal Home Rule Law §2(8); N.Y. State of Local Governments §3(2).

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

without a bi-partisan Board of Estimate that was eliminated by 1990, and has created a
horizontal merger with appointed community boards and appointed municipal level state
party committee as a result of the cooperative merger of NYC during the Robert Wagner
Administration striped local home-rule sovereignty from the people in boroughs that since
1901 had been a local home-rule condominium as a State county subdivision within NYC as
the central coordinating entity.

33. Defined in State Constitution Article IX and II, *the People* are those good citizens eligible to
register and vote within a local home-rule state subdivision entitled to a local board of
elections within, that by State law "Bill of Rights" mandate are sovereign over any municipal
subdivision of residence, and such entity absolutely has no immunity from judicial review
unlike the State that in only certain matters may be reached at the court of claims – e.g. there
is no sovereign immunity for counties, cities, towns, municipal sub-division of the State.

34. A Structure in the state of New York, like other northeastern states, tends to have a more
complex local government structure.

35. Currently, there are 1,605 general-purpose local governments, including 932 towns, 554
villages, 62 cities and 57 counties.

36. Other Local Government Entities, it should at least be mentioned that the underlying local
government structure in New York State is actually much more complex and convoluted than
an examination of only municipalities can reveal.

37. That is because in New York State there are a large number of local government entities in
addition to general-purpose local governments (cities, towns villages and counties) —in fact,
there are more than 4,200 local government entities overall. This larger figure includes 698
school districts and 867 fire districts—special purpose local governments that also levy

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

property taxes. There are also more than 1,000 other special purpose local government entities, including local public authorities, industrial development agencies, special districts, libraries, regional planning boards, community colleges, joint activities, etc.

38. Many of the special purpose entities provide what are essentially municipal services, such as water, sewer, garbage collection and community development.  Recent events and concern about costs for fire protection, sanitation and other services have caused these special districts to come under much greater scrutiny, and the State Comptroller's Office and NYS Attorney General must have heightened oversight efforts focusing on equitable policy solutions to date is lacking and is questionably; a general summary chart of districts within the State follows:

| New York Local Government | | Amount |
|---|---|---|
| ---------- | | ---------- |
| Towns | (NYC has 0) | 932 |
| Villages | (NYC has 0) | 554 |
| Cities | (NYC is 1) | 62 |
| Counties | (NYC has 0) | 57 |
| School Districts | (NYC has 1) | 698 |
| Fire Districts | (NYC has 1) | 867 |
| Other Special Districts | (NYC has many) | 1030 |
| | | |
| Approximate Total | | 4200 |
| | | |
| New York Representation | | Districts |
| Election Districts | | 16306 |
| Polling Places | | 6647 |
| Elected NYC Council members | | 51 |
| Other Local Gov. Elected representatives | | Say 16000 |
| Assembly  Districts  (NYC has 66) | | 150 |
| Senate  Districts    (NYC has 26) | | 62 |
| Judicial Districts     (NYC has 4) | | 12 |
| Appellate Departments (NYC has 2) | | 4 |
| Federal Judicial Districts  (NYC has 2) | | 4 |
| US House District     (NYC has 13) | | 29 |

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

39. NYC Defendants in 2002 aided and abetted redistricting of NYC political districts using total residents within 5% total variation in such a way to cause *eligible voters* ("the People") within each political district in NYC unequal voting power in each Assembly, Senate, Congressional, and local legislative District coterminous within NYC, vary more than the 10% diminimus threshold set by the 1965 Voting Rights Act 42 USC 1973.

40. That with the demise of the bi-partisan NYC Board of Estimate, bi-partisan by law to check corruption, NYC Defendant with impunity use a top-down vertical and horizontal merger power structure that has replaced polycentric or bottom-up home-rule sovereignty of the People, and since elimination of the mandatory bi-partisan NYC Board of Estimate, community boards are the only basis for home-rule however denied due to the nature of top-down appointment.

41. That as part of the 1965 Congressional enactment of the HUD, the State Division of Housing and Community Renewal (DHCR) was formed along with state subdivision planning boards that in NYC created fixed local community board district, and coterminous in Brooklyn total 18 with fixed boundaries notwithstanding councilman, assembly senate and congressional district with appointed members only; and

42. That as a result of the 1965 creation of HUD and the Public housing Authorities (PHA) NYS DHCR the NYC Department of Housing Preservation and Development (HPD) predominate over all real property matters in various state subdivisions and jurisdictions as Federal agents.

43. That NYC Defendant and their agents aid and abet regional governance in conjunction with The Federal Reserve Bank of New York, Rockefeller Foundation, Regional Planning Association facilitated by David Rockefeller documented at http://www.america2050.org/

44. That NYC Defendant operate as if a city-state outside the New York sub-division municipal

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

border have setup offices and agents in the states of New Jersey, Pennsylvania, Connecticut Delaware, Maryland, West Virginia, Virginia and various New York County sub-divisions under the guise of managing: waste, watersheds, land acquisition, police jurisdiction, municipal commerce, thereby are ultra vires to facilitate a questionable regional governance.

45. NYC Defendant flout the mandate of 60% content of intra-municipal produced goods used

46. That NYC Defendant and its agents created the Brooklyn Chamber of Commerce inter alia to serve intra / interstate and international commerce, despite the Logan Act.

47. NYC Defendant and agents with the power of eminent domain are in control of more than 68% of real property in the state sub-division and that piercing the corporate veil will reveal.

48. NYC real property acquisition, control and financial paper are the main commodity for sale.

49. NYC is a self-insured mortgagor of real property in the state sub-division with little or no regulation from authorities of HUD, DHCR and the Federal Reserve Bank of New York.

50. That any one of the Brooklyn Community Board territories has a total population greater than the population of any of the smaller 47 of the 57 county sub-divisions which in fact each have home-rule towns villages and duly elected municipal representation accordingly unlike NYC.

51. That NYC Defendant use special purpose entities to circumvent citizen home-rule and political questions, that otherwise must be presented to the people at election or for a duly proportionate system of representation.

52. That NYC after the collusion involved in the vertical and horizontal merger of all the once home-rule counties, having been boroughs since 1901 with the exception of Nassau County created from Queens County thereafter;

53. NYC Defendant and its agents are in collusion with HUD using HPD separate and apart from DHCR under color of the State Constitution Article X and related State Housing Finance

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

Law Article 5, and direct NYC commissioners to create hybrid Housing Development Fund Companies for closely held real property under NYC control with eminent domain to circumvent the people and political process

54. That NYC and its agents created Bedford Stuyvesant Restoration Corporation (BSRC), Albany Decatur Redevelopment Company (ADRC) all with overlapping directorships who perform close dealing among many other special purposes entities to circumvent political process and the people with actual sovereignty per se according to state law.

55. NYC Defendants have eliminated School District Elections are under central appointed

56. That NYC Defendants and agents withhold NYC controlled properties from the people to purchase in order to maintain a monopoly and artificially increase real property market value that involves interstate commerce, securities, commodities and international investment.

57. That the NYC Defendant and its agents have used the EL §§-124 Judicial nominating convention process for the purpose of placing sinecure agents of influence in the Judiciary to safeguard control over the monopoly of real property matters for unjust enrichment, and to effect takings within the unequally devised NYC Civil Court system and the New York State Supreme Court with jurisdiction over real property and landlord tenant matters.

58. That the Borough of Brooklyn has a NYS Supreme Court infamous for a rocket docket taking of real property in collusion with NYC Defendant and its agents to maintain unjust enrichment and monopoly; and attorneys outside Brooklyn refrain from practice therein.

59. By way of the foregoing Plaintiffs individually as eligible voters representative of a class of all voters and those plaintiffs desiring expectation of equal treatment are denied:

    a.   Home-rule sovereignty per se in any election of local community boards;

    b.   Substantive due process of the State Constitution as a equal protection matter

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

referenced in above paragraphs 5 thru 39 have been given less voting power within NYC by gerrymander vote power disproportionate diminishment and dilution; and

c. That there is a more than a 10% diminimus variation over the mean number of voters for Strunk in his 57th AD and for Thomas in the 56th AD and as a result both have less voting power and therefore diminished expectation of effective suffrage participation compared with the other Brooklyn ADs and the NYC ADs overall

d. By barring a scale of local elected representation NYC and its agents have denied Plaintiffs and those similarly situated in the minority any expectation of effective participation in self government; and

e. That with Plaintiff Guilavigui as a resident alien desiring to become a citizen and vote has been affected by denial of substantive due process and all together Plaintiffs along with those similarly situated are denied equal protection of the law within and without the Borough of Brooklyn

f. Plaintiffs suffer from infringement of: (i) speech, (ii) association, (iii) liberty and (iv) freedoms directly affected by the NYC Defendant denial of peaceful use of proprietary property in their community unequally imposed by NYC Defendant and agents too numerous to name, and is done by arbitrary action both despite of the law and under color of law for the Purpose of unjust enrichment;

g. That Plaintiffs along with those similarly situated differently in various community Boards are nevertheless being denied suffrage entirely, and when afforded

h. As with a city council member(s) are still without direct control by such representation over a specific board and even face multiple overlapping Council Districts so Plaintiffs and those similarly situated suffer unequal suffrage treatment;

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

i.   Further suffer special injury from unequal treatment in home-rule determination in a respective individual Election District where each plaintiff resides within a respective community board of the total of 18 Brooklyn Community Boards, and

j.   That injuries are different and unequal treatment in regards to lack of NYC based bi-partisan elections affording bottom-up participation as under EL §2-104 outside NYC for citizens and residents in other 57 state subdivisions there afforded suffrage.

60. **Wherefore**, Plaintiffs prayer of the Court for equity relief injunction and declaratory order:

a.   Creating a special master to oversee provision of suffrage and equity throughout NYC

b.   Return of Local Home-rule sovereignty to the people within Brooklyn as it must only be a condominium instead of a cooperative part of the entity NYC

c.   That EL §2-110 is facially unconstitutional in regards to only 25% election of AD representatives require the actual bi-partisan election of all representation; and that

d.   As a matter of equal protection without individual EL §4-100 Election District leader elections, must be two for each state majority party, thereby effecting bi-partisan State Party control of elections and the Local Board of Elections, must be afforded for membership in the respective municipal bi-partisan committee as a key prerequisite for alternative ballot access of candidates including for President and Vice President;

e.   That there must be bi-partisan elections held every two years after the election of governor starting in 2007, to elect at least two representatives from each EL §4-100 Election District at the same time as for respective Assembly District Leader and Assistant leader then to be a member of the Brooklyn Committee of the State Party, and time is of the essence to be achieved 36 days before the primary is held

f.   That no borough bi-partisan Political Party Committee as part of a State Party may

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

exist absent citizen local home-rule;

g.  Provision of election for representation in each of 18 Brooklyn Community Boards

h.  And for such other and different relief deemed essential herein by the Court.

### COUNT TWO
**NYC and its agents violate the Sherman Anti-trust Act and Clayton Anti-trust Act as a monopoly and oligopoly formed to control real property as a commodity in international trade for unjust enrichment as a Noncompliant and Nonconforming State subdivision under the State Constitution**

61.  Plaintiffs Thomas and Strunk are citizens who own or have owned city owned property

within Brooklyn as a privity class similarly situated, and

62.  That Plaintiffs represent a class of all owners effected by reassessed value of real property

63.  Plaintiff Guilavigui is a renter resident within a multiple dwelling in privity with all those

who are not part of the "Rent Controlled" "rent stabilized" and that pay fluctuation in rent

market value in privity with a class of all those effected by inordinate rent increases as

thereby effect by reassessed value of real property based upon fraud or otherwise;

64.  And all Plaintiffs as a class of vendors and customers have been effected by NYC

Defendants and their agents actions in regards to the City owned commercial real property at

Block 1859 Lot #1 previously taken under eminent domain action by NYC prior to 1977 and

where the Plaintiffs' FACM / Bed-Stuyvesant Cooperative Market is now presently located

on Fulton Street at the northeast corner of Fulton and Albany

65.  That the Court has original jurisdiction per 28 USC 1331 pursuant to the Sherman Ant-Trust

Act and Clayton Anti-trust Act and related State and Federal laws, wherein NYC Defendant

and their agents too numerous to name individually and that there is a second class of special

purpose Defendants and its agents as a class too numerous to name who have acted

collectively to form a monopoly and monopsony to the detriment of Plaintiffs and those

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

similarly situated herein complain of below listed defendants individually and collectively referred to as "NYC Monopoly Defendant", as follows:

66. **NYC DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT** (HPD) by Commissioner Shaun Donovan, located at 100 Gold Street 3rd Fl. .NY NY 10038.

66-A **BROOKLYN CHAMBER OF COMMERCE** 25 Elm Place #200 Brooklyn NY 11201

67. **BEDFORD-STUYVESANT RESTORATION CORP.** (BSRC), located at 1368 Fulton Street 6th Floor Brooklyn NY 11216.

68. **ALBANY DECATUR REDEVELOPMENT COMPANY** (ADRC), located at 1368 Fulton Street 6th Floor Brooklyn NY 11216.

69. **COLVIN GRANNUM** individually and as President of BSRC and ADRC, located at 1368 Fulton Street 6th Floor Brooklyn NY 11216.

70. That NYC and its agents through its HUD Public Housing Authority (PHA) agent HPD conspired and set out to monopolize the mortgage market for real property in NYC without strict oversight by DHCR and HUD

71. That NYC and its agents used special purpose entities as districts with closely held directorships to circumvent the political process and to prevent persons resident within a respective Community Board interested in competitively bidding from bidding on NYC held property and from even directly knowing about matter necessary to purchase such property

72. That NYC Monopoly Defendant and its agents used eminent domain to take property for unjust enrichment with a sham development plan under its control with the NYC Planning Commission with control over land use policy and authority.

73. That the NYC Monopoly Defendant and its agents at the NYC Planning Commission that arbitrarily withheld community policing maliciously with the intention of depressing real

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

property value and or visa versa in targeted areas so that NYC Monopoly Defendant and

insider agents as a multi-lateral entity may acquire or affect property for unjust enrichment.

74. That there is a permanent police record available to show that some communities got special

treatment where others didn't that coincides with land use planning objectives of the NYC

Monopoly Defendant;

75. That NYC Monopoly Defendant manipulated the real property assessed value and actual

market within parts of the 3rd and 8th Brooklyn Community Boards and entire territories

amongst other Boards as a matter too numerous to name herein; and

76. That the NYC Monopoly Defendant and its agents take property by eminent domain and in

rem actions using the Second Judicial District of the State Supreme Court;

77. That the commercial real property at the Northeast corner of Fulton and Albany designated at

Block 1859 Lot 1 (Subject Commercial Lot #1) was taken by a NYC Monopoly Defendant

by eminent domain action and is a parcel subject to a community development plan with

involvement of United States Housing and Urban Development (HUD), DHCR, HPD and

NYC Defendant agents at the Brooklyn Community Board #3 having direct jurisdiction and

oversight and as similarly done in other Brooklyn Community Boards to numerous to name;

78. That the Subject Commercial Lot #1 was and is a commercial part of the plan as so

designated by the land use committee of the BCB#3 and NYC Planning Commission;

79. That NYC transferred the Subject Commercial Lot #1 among others as part of a urban

development plan in 1977 to its own agents BSRC with Housing Development Fund

Company subsidiary ADRC having an identity of directors in an 159 Agreement in 1979;

80. On 10/21/1977 the Finance Administrator of NYC issued a deed for Lot #1 of Block 1859

and that NYC Monopoly Defendant performed a series of transactions until 8/18/2005 when

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

HUD assigned the NYC mortgage for the fifth time through intermediaries as follows:

| | | | | |
|---|---|---|---|---|
| 10/1/1980 | SUNDRY MISCELLANEOUS | 19 | CITY OF NEW YORK | ALBANY DECATUR REDEVELOPMENT CO |
| 10/1/1980 | SUNDRY AGREEMENT | 159 | CITY OF NEW YORK | |
| 8/19/1983 | UNIFORM COMMERCIAL CODE 3 | 0 | ALBANY-DECATUR REDVLPMT | |
| 8/19/1983 | AGREEMENT | 5 | ALBANY-DECATUR REDEVL CO | CITIBANK, NA |
| 9/25/1984 | UNIFORM COMMERCIAL CODE 3 | 0 | ALBANY-DECATUR REDVLP CO | |
| 7/18/1990 | UNIFORM COMMERCIAL CODE 1 | 0 | ALBANY-DECATUR REDVLP CO | WEYERHAEUSER MORTG CO |
| 12/6/1996 | ASSIGNMENT, MORTGAGE | 6 | USGI INC | REILLY MORTGAGE ASSOCIATES L.P. |
| 8/18/2005 17:02 | INITIAL UCC1 | 6 | ALBANY-DECATUR REDEVELOPMENT COMPANY | REILLY MORTGAGE ASSOCIATES, L.P. |

81. That on 10/1/1980 the "Sundry Agreement " 159 pages in length was entered as a covenant

by NYC that binds all further use of the Subject Commercial Lot#1.

Amended Complaint page 17 of 43

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

82. That NYC Monopoly Defendant use shills like BSRC and ADRC as its agents for unjust

enrichment to service payments on the mortgage and even used a church organization as

tenants for revival meetings up and until about 2000 when the Bush Administration

promulgated the "*Faith Based initiatives Program*" then facilitated by HUD, DHCR for HPD

with NYC Defendants to achieve the goals of the NYC Monopoly Defendant.

83. That the Revival Meeting revenues were insufficient to service the mortgage and that the

NYC Monopoly Defendants decided to apply community policing tactics to force those

vendors on Fulton Street, that were not already acting with a tying agreement with the

commercial merchants along Fulton Street to relocate over to the Subject Commercial Lot #1

by 23 May 2001 to service the Mortgage and inflation of property value for unjust

enrichment purposes.

84. NYC, Brooklyn Chamber of Commerce, Community Board #3, Bedford-Stuyvesant

Restoration Corp, Central Brooklyn Partnership and Albany Decatur Redevelopment

Company published a Public Notice to the Community that on 23 May 2001 the street

vendors would be relocated to the present location of the FACM as shown in stated quote:

Begining Wednesday, May 23, 2001 street vending will no longer be
allowed on Fulton Street and its immediate vicinity.

That's why we want you to know that as of that date ( May 23, 2001 ), all of
the street vendors carrying your favorite goods will be operating from the
Albany Avenue Market on the  corner of Albany Avenue and Fulton Street.

Please, begining May 23, 2001, bear in mind where your vendors whom
you've always patronized will be; at the new market on Fulton Street and
Albany Avenue sponsored by the Central Brooklyn Partnership.

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

85. That the Program entitled Fulton FIRST http://www.ibrooklyncom/fultonfirst/about is an economic development initiative of the Brooklyn Chamber of Commerce focused on the retail revitalization of Fulton Street in the Brooklyn neighborhoods of Fort Greene, Clinton Hill and Bedford-Stuyvesant.

86. In November 2000, initial funding of the Fulton FIRST project was made possible by a $750,000 grant from Fleet Boston Financial Foundation.

87. Additional funding had been made possible by the support of Congressman Edolphus Towns, the Office of the Mayor of New York City and the NYC Department of Small Business Services through the extension of a $3 million grant to broaden the impact of the project.

88. The additional funding made possible the completion of the Fulton Street Retail Redevelopment Plan in Bedford-Stuyvesant.

89. That NYC Monopoly Defendant decided to use the shill Central Brooklyn Partnership to effect unjust enrichment well beyond servicing the mortgage that by December 6, 1996 had already been reassigned four times as the above chart shows with the intent that the value of the Subject Commercial Lot #1 would be inflated showing additional income sufficient for further assignment that then occurred between HUD and the McLean Virginia Mortgage Company REILLY MORTGAGE ASSOCIATES, L.P. on August 8, 2005; and

90. With the plan thereafter with reassignment accomplished, NYC Monopoly Defendant had no further need for using the shill Central Brooklyn Partnership or even maintain the charade of a market and hapless vendors and Plaintiffs at the Subject Commercial Lot#1, ordered them disposed and directed Colvin Grannum to accomplish that by any means possible.

91. That Central Brooklyn Partnership was never a tenant at the Subject Commercial Lot #1

92. That the Vendors reasonably should have not have had to pay any more than the Church

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

Revival tenant had monthly, especially in light of the site improvement investment made

with funds that the owner receives by unjust enrichment as permanent site improvement;

93. However the vendors at the Subject Commercial Lot#1 past and present experience rent price

gouging as if an additional investment as forced by the NYC Monopoly Defendant in order

inflate the value of the property for the intended reassignment of the mortgage that occurred

on August 8, 2005 as done after the sham bankruptcy of Central Brooklyn Partnership.

94. That from January 2001 until the sham use of the Bankruptcy proceeding to cover their trail

the NYC Monopoly Defendant maneuvered use of the Subject Commercial Lot #1 for

exclusive use as low income housing without any further ground floor commercial use as

otherwise required by the covenants entered September 27, 1979 on the NYC Public Record

at Reel 1187 Page 1140 thru Reel 1187 Page 1298 readily available to view on the Internet

and that on Page 1145 in part states quote:

> "... *Urban Renewal Plan provides for the demolition, clearance and redevelopment of*
>
> *said Urban Renewal Area and the rehabilitation thereon of multiple dwellings and such*
>
> *business and commercial (if any), parking, cultural, and recreational facilities as are*
>
> *deemed reasonably incident thereto ... "*

95. That NYC Monopoly Defendant circumvented the Brooklyn Community Board #3 land use

review process except as a rubber stamp and at the same time orchestrated community

division for breaking the covenant land use agreement that anyone else would submit to,

96. That NYC Monopoly Defendant and agent insiders decided arbitrarily to use the Subject

Commercial Lot#1 for Housing exclusively with provision of HUD Low Income Housing

Tax Credits (LIHTC) and special public subsidies for no less than 15 years or more,

notwithstanding the covenants upon the Subject Commercial Lot #1 and required land use for

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

street level commercial use;

97. NYC Monopoly Defendant maliciously deny substantive due process to merchant vendors like Plaintiffs Thomas and Guilavigui along with those similarly situated and no customers like Plaintiff Strunk and those similarly situated.

98. That the NYC Monopoly Defendant and those agents and private parties associated with the "enterprise" subsequently created within the fourteen years from 1993 until the present as done by the Clinton Administration and now Bush Administration use of HUD and public funds associated with LIHTC and the "Faith Based Initiative", intend to use insider tax shelter and unjust enrichment by syndication that includes but is not limited to Forest Ratner Companies, Goldman Sachs Urban Fund and all those contributors and beneficiaries of the Federal Reserves Bank of New York, Rockefeller Foundation with cross directorships overlapping with other agents of what may reasonably be referred to as a RICO type Enterprise intent on cornering the mortgage market and profiteering with a sham to exploit the commodity of real property under NYC Monopoly Defendant's control to the detriment of persons within targeted communities.

99. That then HUD Secretary Andrew Cuomo had HPD divest itself of real properties for whatever that the NYC Monopoly Defendant could wash its hands after having the PHA HPD sequester and segregated real property for selective insider use and unjust enrichment;

100.    That Plaintiff Vendors along with those similarly situated seek to occupancy and relocate to the commercial real property at the intersection of Marcus Garvey and 1576 Fulton Street; however, controlled by the NYC Monopoly Defendant whose agents refuse to lease or assist Plaintiff vendors to relocate there and or accept a reasonable term of lease with an option to buy as a continuation of inside dealing done by NYC Monopoly Defendant.

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

101.   That based upon the foregoing facts and transactions that Plaintiffs Thomas and

Guilavigui along with those vendors past and present similarly situated and customers having

lost the benefit of such street level vending bargains, and one on one service not otherwise

available since being relocated to the Subject Commercial Lot #1 since 23 May 2001, have

suffered special financial injury due directly to NYC Monopoly Defendant and agents unjust

enrichment machinations that had forced vendors to merge with unrelated business, subject

to unfair dealing, restructure of the customer base placed at the far end of the Fulton Street

shopping district away from the train stops, imposing rent gouging, barriers to competition

previously available, prevention of peaceful use of the property, the burden to growth by lost

income, barriers to growth potential, expense of relocation including loss of Subject

Commercial Lot#1 site improvements,  cost of litigation in the amount of $1,855,000

102.   **Wherefore** Plaintiffs Thomas and Guilavigui as vendors and Strunk as a customer

similarly situated prayer of the Court for restraint ordering:

   a.   Injunction prohibiting further of LIHTC without special master oversight;

   b.   ADRC to submit any changes for use of Subject Commercial Lot #1 from

        commercial to housing for review by the land use committee of the Brooklyn

        Community Board #3 before any further Federal funding be applied to the project

        may proceed and that any changes to the covenant thoroughly reviewed and satisfied.

   c.   That NYC and HPD shall enter into negotiations for negotiating a lease with option to

        buy the building at intersection of Marcus Garvey and 1576 Fulton Street for the

        orderly relocation of the Plaintiffs Vendors and those similarly situated in partnership

        subsequent to an appropriate land use committee review of the change in the

        covenants of use for the Subject Commercial Lot #1, and in the event that land use is

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

revised accordingly and that vendor's customer may realize such commercial outlet.

d.  That there be a trial of the facts on the matter of NYC Monopoly Defendant's culpability and then a trial on award of damages before a jury

e.  And for such other and different relief deemed essential herein by the Court.

### COUNT THREE
**Colvin Grannum by slander and libel used the NY Daily News to Defame Plaintiffs and those similarly situated**

103.  Plaintiffs Thomas and Guilavigui in a privity class of vendors similarly situated, and Plaintiff Strunk as a Customer in privity with a class of customers have been effected by Defendant Colvin Grannum indhvidually and as the President of BSRC and ADRC located at 1368 Fulton Street 6th Floor Brooklyn New York 11216, notwithstanding, but nevertheless in conjunction with the malice intended by all Defendants collectively pursuant to Count ONE and Count Two in paragraphs 1 thru 102; and

104.  That the Court has original jurisdiction per 28 USC 1331 pursuant to New York State Civil Rights Law Chapter 6 as to libel and slander within a statute of limitations defined in the NYS CPLR and in the matter of common law equity as a matter of enforcement of the 14th Amendment in the matter of 42 USC 1983, 1985(3) and 1986 State Action by its agents;

105.  That Colvin Grannum maliciously defamed Plaintiffs and those similarly situated including those members of the community who are also customers now divided by defamation and confusion for continuing to shop at the City controlled commercial real property at Block 1859 Lot #1, by agreements of 27 September 1979;

106.  That Colvin Grannum acted as an agent of the NYC Defendant and NYC Monopoly Defendant and their agents in   regards to the malicious use of slander and libel by publication on 4 June 2006 by the NY Daily News in the Brooklyn Sunday edition by

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

intentionally characterizing all those associated with the Bedford Stuyvesant Cooperativa

Market as "pirates" to divide the community and aid in ease of eviction as well to block the

ability of Plaintiff vendors to relocate, and form a defense by making it more difficult to

obtain an attorney willing to devote some time to understand the complexity of the scheme

"They're pirates," said Grannum. "We've come to a point where we have to do something." Grannum said the initial agreement with the market expired three years ago, and since three years ago, and since then the vendors have been encouraged to move on.

Now the group is working with other investment partners to redevelop the lot into at least 58 subsidized condos for low-income first-time homebuyers.

"We've got an affordable housing shortage." said Grannum, "We can't let valuable land just sit there— especially when there is debate about what they're doing is even productive."

Grannum also called the market an "eyesore," and said he is concerned about complaints that vendors sell illegal counterfeit goods.

107.    That Colvin Grannum from January 2001 onward intended that CBP management neglect

to provide adequate support facilities as a construct for Colvin Grannum to slander and libel;

108.    That Colvin Grannum maliciously intended to cause defamation despite having no

complaints filed against the Plaintiff vendors per se.

109.    That Colvin Grannum worked with Central Brooklyn Partnership to form the

composition of product for sale and resale at the Bedford Stuyvesant Cooperative Market, so

he would bear a direct material part in management of vendors at the market did not have

evidence of piracy

110.    That Defendant Grannum knows that Plaintiff vendors are exactly the same quality and

type of product and in many cases provided from the same wholesalers and manufacturers as

for the other merchants along Fulton Street.

111.    That based upon the foregoing and the impact of circulation of the 4 June 2006 Sunday

edition readership of the NY Daily News beyond the irreparable injury of defamation

Plaintiff Vendors have lost business in excess of $75,000 from existing and potential

customers effected by the libel publication are entitled to recover by Retraction of such libel

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

and slander by suitable publication at the expense of Defendant Grannum,

112.   **Wherefore** Plaintiffs prayer of the Court is for an Order of restraint from further slander

and libel, and an injunction requiring a published retraction sufficient to correct future

financial losses and that there be trial of the facts for damages to determine punitive damages

and other and different relief deemed necessary by the Court.

### COUNT FOUR

**NYC Defendant and NYC Monopoly Defendant collude with an Enterprise, defined by the RICO Act per 18 USC 1961 thru 1964, to harbor illegal aliens used to target communities of color, and to suborn substantive due process to influence intra / interstate and international commerce regarding the marketing of real property and related securities facilitated by LIHTC, Federal and State Subsidy for Housing and private investment capital for unjust enrichment**

113.   Plaintiffs Thomas and Strunk as citizens owning or having owned previously city owned

property within Brooklyn as a privity class similarly situated, and Plaintiff Guilavigui as a

renter resident within a multiple dwelling in privity with all those who are not part of the

"Rent Controlled" "rent stabilized", as in privity class of all those effected by inordinate rent

increases and targeted community pump and dump practices for real property marketing and

assessed evaluation involving fictitious appraisals for mortgages issued against public policy

without due diligence of State or Federal oversight, and whereby communities of color have

been targeted and there is an irreparable special injury per 42 USC 1982;

114.   That the Court has original jurisdiction per 28 USC 1331 pursuant to the Racketeering

Influence Corrupt Organizations Act ("RICO") per 18 USC 1961 thru 1964 right to civil

action against a class of defendants who since 1993 conspire and facilitate by conduct

associated with a racketeering enterprise with two separate predicates of racketeering activity

within ten years before the August 8, 2005 provision of a reassigned mortgage by HUD to

the Subject Commercial Lot #1 facilitated by NYC Defendant, NYC Monopoly Defendant.

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

115.  That the alleged racketeering enterprise is composed of quasi public and private

corporations and special purpose public corporations under both federal and state jurisdiction

as well as Federal agencies that conspire with the NYC Defendant and NYC Monopoly

Defendant whose collusion with an Enterprise, defined by the RICO Act per 18 USC 1961

thru 1964, willfully harbor illegal aliens targeting communities of color, and to suborn

substantive due process to influence intra / interstate and international commerce regarding

the marketing of real property and related securities facilitated by LIHTC, Federal and State

Subsidy for Housing and private investment capital for unjust enrichment

116.  That the alleged racketeering enterprise is a multi-lateral structure for profiteering with

targeted overcrowding of available housing promulgated directly with harboring of illegal

aliens done by NYC Defendant and the NYC Monopoly Defendant, that under the political

guise to maintain threshold levels requisite to "Rent control" and "Rent Stabilization" is a

strawman for unjust enrichment, and is a device to systematically inflate the market value of

real property effecting Plaintiffs as a class of vendors and customers both at the Block 1859

Lot #1 and for the entire community, thereby creating economic barriers to ownership and

occupancy in the targeted community board districts in Brooklyn and elsewhere

117.  That the Enterprise Defendant operates in the district containing the Shabazz Market in

the Harlem Community enterprise zone in the Borough of Manhattan, however effecting to

their detriment the FACM / Bed-Stuyvesant Cooperative Market along with an economic

class similarly situated in the Brooklyn Community Board #3 and #8 community; as a matter

notwithstanding but nevertheless in conjunction with the malice intended by all Defendants

collectively pursuant to Count ONE, Count Two and Count Three in paragraphs 1 thru 112;

118.  That the alleged Racketeering Enterprise includes NYC Defendant, NYC Monopoly

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

Defendant, Defendant Grannum, hereinafter collectively known as the "Enterprise Defendant" also includes defendant(s) entity(s) and agency(s) and agent(s) individually:

119.  **The FEDERAL RESERVE BANK OF NEW YORK** (FRBNY) located at 33 Liberty Street New York New York 10045;

120.  **ELIZABETH A. RODRIGUEZ** Individually and as Vice President of FRBNY, with her place of business located at 33 Liberty Street New York New York 10045;

121.  **ROCKEFELLER FOUNDATION** location at 420 Fifth Avenue 22nd Floor New York New York 10018;

122.  **DARREN WALKER** individually and as Vice President of the Rockefeller Foundation with place of business located at 420 Fifth Avenue 22nd Floor New York New York 10018;

123.  **GOLDMAN SACHS URBAN FUND** (GSUF) located at One New York Plaza 37th Floor New York New York

124.  **RICHARD ROBERTS** individually and Director of the GSUF, with place of business located at GSUF at One New York Plaza 37th Floor New York, NY

125.  **FOREST CITY RATNER COMPANIES** located at 1 Metro Tech Center North 11th Floor Brooklyn, NY 11201

126.  **BRUCE RATNER** individually and as President of FCR with place of business located at 1 Metro Tech Center North, 11th Floor Brooklyn New York 11201

127.  **UNITED STATES HOUSING AND URBAN DEVELOPMENT** (HUD) by its Secretary by Regional Director Sean M. Moss at Jacob Javits Federal Building 26 Federal Plaza Reception Room 3502 New York, NY 10278-0068

128.  **ANDREW CUOMO** Individually, as then HUD Secretary and now as well as NYS Attorney General with place of business location at The Office of the NYS Attorney General

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

120 Broadway 24th Floor New York New York 10271;

129.    That the Enterprise Defendant uses conduct activity predicates of mail [4] devised in a

scheme, with wire and media in conjunction with harboring of illegal aliens sanctuary per 18

USC §1324 (a) (1) (A) (iii.) (iv.), obstruction of INA / ICE process in the matter of

facilitating illegal aliens to pose as US Citizens [5] to obtain fraudulent documents [6], with

politically motivated dereliction of fiduciary duty that constitutes a component of the

enterprise [7] scheme for unjust enrichment to rig real property values and mortgage securities

and for insider use of LIHTC Federal / State in circumvention of IRS tax laws, and that the

---

[4]   18 USC § 1341. Frauds and swindles - Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

[5]   18 USC § 1425. Procurement of citizenship or naturalization unlawfully- (a) Whoever knowingly procures or attempts to procure, contrary to law, the naturalization of any person, or documentary or other evidence of naturalization or of citizenship

[6]   18 USC § 1546. Fraud and misuse of visas, permits, and other documents – (a.) Whoever knowingly forges, counterfeits, alters, or falsely makes any immigrant or nonimmigrant visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, or utters, uses, attempts to use, possesses, obtains, accepts, or receives any such visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, knowing it to be forged, counterfeited, altered, or falsely made, or to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained

[7]   1343. Fraud by wire, radio, or television -Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

Enterprise Defendant willfully facilitates, aids and abets to defraud Plaintiffs, those similarly situated, the Federal Treasury by devaluing and or nullifying (offsetting) U.S. Citizen's proprietary vote investment, and proprietary property and thereby thieves and extorts expectation of suffrage effectiveness, real property, and individual liberty.

130.    That the Enterprise Defendant pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim includes a description of the pattern of racketeering with the following information:

18 USC §1028 (a)(1)(4)(7)(c)(1)(2)(3)(d)(1)(f)- (fraud and related activity in connection with identification documents)
18 USC §1324 (a) (1) (A) (iii.) (iv.) (Harboring illegal aliens)
18 USC §1341 (mail fraud)
18 USC §1343 (wire fraud)
18 USC §1425 (a) - (procure citizenship or naturalization unlawfully)
18 USC §1546 (a) - (fraud and misuse of documents)
18 USC §1952 (a) (1) (3) (b) (2) (3) – (interstate and foreign travel in aid of racketeering Enterprise)
18 USC §1957 – (engaging in monetary transaction in property derived from specific unlawful activity)

131.    That the Plaintiff Vendors had started street vending near the Nostrand Avenue stop of the Long Island Railroad on Fulton Street, where great numbers of passersby afforded a decent opportunity for sales.

132.    That the Giuliani Administration in 2000 increased efforts with police sweeps to eliminate street vending on Fulton Street at the Train Station, and coincides with the policy shift by NYC to relocate all street vendors along Fulton Street to the vacant lot at the Northeast Corner of Fulton Street and Albany Avenue in conjunction with the Federal designated enterprise zone designated by HUD and Brooklyn Chamber Commerce "*Fulton First*", although known as "*Anchor Initiative*" originally as championed by the Reverend Wright the "*Cornerstone Initiative*" named after his Cornerstone Church.

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

133.    That in 2000 the Brooklyn Chamber of Commerce ("BCC") used the following

organizations to assist with ongoing Fulton FIRST initiatives in Budget year 2000 thru 2002:

- ***Bedford-Stuyvesant Restoration Corporation (BSRC)***
  o Business Improvement District Feasibility Study
  o Development of Merchants Association
  o Facade Improvement Program
  o Technical Assistance to Merchants
  o Financial Assistance to Merchants
  ***Business Outreach Center Network***
  o Financial Assistance to Merchants
  o Seminars on Leasing & Merchandising
  ***Central Brooklyn Partnership*** (2001 -2002 Program Year):
  o Development of Bedford-Stuyvesant Co-op Market

  o Technical Assistance to vendors in Co-op Market ***International African Arts Festival*** (2002 Program Year):
  o Development of Bedford-Stuyvesant Co-op Market
  o Technical Assistance to vendors in Co-op Market
  ***Pratt Area Community Council***
  o Business Improvement District Feasibility Study
  o Employment & Entrepreneurship Resource Center
  o Merchant Organizing
  o Location Assistance
  o Free Business Counseling
  o Fulton Area Business Association
  o Mid Fulton Street Merchants Association

134.    That based upon information and belief evidenced by the Exhibits the role of Low

Income Housing Tax Credits ("LIHTC") to guarantee investment is an important fact

involving participation of LISC, Enterprise Foundation and the National Housing Institute

("NHI") with sponsor funding by the Rockefeller Brothers Funds and other foundations.

135.    That in January 2001 the NHI publication featured an Article written by Darren Walker

to explain the Bush Administrations "Faith Based Initiatives" Program with HUD and other

agencies to encourage Community Development Corporation ("CDC") syndication as he had

done with the Abyssinian Church's Abyssinian Baptist Development Corporation ("ADC")

as its Chief Operating Officer and as Vice President of Rockefeller Foundation Initiatives, a

copy of the NHI Article entitled "*Not By Faith Alone*" and quotes the newly appointed

BSRC President Colvin Grannum who states quote:

"*The church has to run [its CDC] like a corporation, based upon practices from a business model.*" And that Darren Walker in summary states, "*...Housing and community development can be a powerful and transformative role for a faith-based group as long as they realize it will take more than faith to succeed*".

Amended Complaint page 30 of 43

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

136.  That as such NYC, HUD, HPD, BCC and a tight circle of investors entered an agreement

to use Brooklyn Community Board #3, BSRC, ADRC and Central Brooklyn Partnership as

referenced above to remove Plaintiffs from Fulton Street purportedly to provide vendors with

incentive of facilities development with training and management at the NYC property

FACM is now located at, and published a Public Notice announcing to the Bedford

Stuyvesant Community that on 23 May 2001 the Fulton Street Vendors would be relocated at

the Northwest Corner of Fulton and Albany as the Bedford Stuyvesant Market controlled by

Central Brooklyn Partnership, and in as much the notice is a public contract with vendors.

137.  That the startup funds were provided by the Brooklyn Chamber of Commerce and the

Bank of Boston for site preparation with pavement drainage, electric, lighting, fencing and

vender area designation and temporary shelters, completion was announcement in the 1 June

2001 addition accordingly as referenced in the Article that appeared in the *City Limits*

*Magazine* also found at CityLimits.org explaining the move.

138.  That from the beginning the Market temporary shelters provided by CBP like umbrellas

were inadequate and the training, management, support facilities and a security subcontractor

was unsatisfactory.

139.  That Mark Winston Griffith, then Executive Director of CBP charged a weekly user fee

of $75 plus incidental expenses for each marked 5 foot by 10 foot space, and for which all

vendors paid by the square foot of occupied space free of general circulation.

140.  That Fulton at Albany market total vendors fluctuated constantly, because the fee and

lack of services frustrated vendors and the total number never exceeded thirty; however,

would have if done properly without CBP sabotage, drawn more customers and sales.

141.  That had there been good faith dealing CBP revenues would have been about $14,000 a

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

month from more than 30 vendors for an annual total of about $172,000, and with that the Market and Vendors would have prospered, however to no avail did not happen; however, to no avail did not happen seemingly by design.

142.    That CBP revenue was more than adequate, but fluctuated until 2004 when CBP announced financial difficulties; however, even under the worst of circumstances as stated in a *Gotham Gazette* Article in January 2005 by Mark Griffith stated that Market vendors revenues were over $750,000 in 2003 quote:

**In 2003, the Bedford-Stuyvesant Cooperative Market, by conservative estimates, generated a modest, but respectable, three quarters of a million dollars in sales. Many of vendors in fact did so well that they left the market to start free-standing, "legitimate" businesses.**

143.    That for the Market to run properly the basic fixed overhead whether there was one vendor or fifty would be $2000 monthly, plus security, facilities and other fixed expenses for a total of say $5720, and with an additional cost of say $44 per Vendor over just one and with thirty vendors, the fixed overhead would be say $7000 monthly and $84,000 annually.

144.    That from May 2001 until May of 2004 CBP took in more than adequate revenues although it did not make the necessary investment as promised to the vendors and community, and that we had no way to know if CBP was paying basic fixed expenses;

145.    That absent control over CBP records, associated with the Chapter 7 Bankruptcy filling regarding such expenditures, the net income after overhead should have been based upon what CBP was expecting the vendors to pay over time, and should have been somewhere over $250,000 which I would consider to be essential investment in upgrading the skills and capability of the vendors and the facilities both; and accordingly didn't get done.

146.    That for whatever reason CBP grant funding for the 2005 fiscal year by NYC or

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

elsewhere dried up after the 11 September 2001 World Trade Center attack however was not the cause for the CBP Bankruptcy.

147. That the investment to meet the needs of the Market and commitment to the Vendors were intentionally not met from the very beginning, and that there were complaints and dissatisfied vendors some of whom over time began to leave.

148. That on 25 November 2002 the Borough President and the NYC Department of Small Business Services still reeling from the impact of the 11 September 2001 attack upon the World Trade Center served as host for the *2002 NYC Economic Development Summit* with featured speakers among whom Kenneth Adams of the BCC, Colvin Grannum of BSRC, Bruce Ratner of Forest City Ratner of "Atlantic Yards", and Sheena Wright of ADC in Harlem.

149. That in late 2003 announcement was issued by ("FRBNY") Federal Reserve Bank of New York's Vice President Elizabeth Rodriguez for the 12 February 2004 conference entitled "*An Orientation To The Capital Markets For CDFIS &CDCS New Avenues for the Changing Context of Community Development Finance" hosted* by FRBNY with featured speakers that listed Colvin Grannum of BSRC, Richard Roberts of Goldman Sack Urban Fund, and Darren Walker of the Rockefeller Foundation, as presenters shaped policy decisions effecting changes that surfaced and started happening thereafter with CBP and others undermining FACM.

150. That in a *Gotham Gazette* January 2005 article concerning NYC News and Policy sponsored by the Rockefeller Brothers' Fund and other non-profit foundations, entitled "Evicting The Vendors From Bed-Stuy Market" written by Mark Winston Griffith made a

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

series of allegations within which document substantive due process and equal protection issues also involving use of illegal aliens targeted at the community for malicious purposes;

151. That the Enterprise Defendant and its many layers of foundations and funding sources have an unfair advantage and control over policy matters that effect Plaintiffs under the conditions of the questionable top-down nature of NYC without any properly elected Community Board System to truly reflect each community other than the enrichment of a select group of real property owners in the community availing themselves of the Enterprise Defendant activity;

152. That from May 2004 until the CBP Bankruptcy proceeding till about May of 2005 vendor payments continued; however, vendor dissatisfaction increased with incidents of security problems and abandonment of the so-called management training mission and due to the fact that vendors were not getting management's cooperation and support as originally promised and as such some vendors left resulting in a continuing revenue decline.

153. That the Enterprise Defendant denied payment to Plaintiff Thomas in the matter of employment at the Market as an assistant coordinator services in the total of $15,000 and to no avail remain an open claim being investigated by the NYS Labor Department.

154. That from June 2005 until this day vendors and Plaintiff FACM association were forced to provide overhead service and have paid $10,000 of the apparent $18,000 accrued since 1 July 2006 and is current according to the "Stipulation" entered November 9, 2006 in the L&T Holdover action with Index 91717/06 initiated by ADRC and Colvin Grannum in September 2006, having been done using an Invoice dated for 1 July 2006 for $99,000;

155. That on 1 March 2007 Plaintiffs Thomas and Guilavigui wrote a letter requesting assistance from Commissioner Robert Walsh of the NYC Department of Small Business

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

Services, and that later on 12 March 2007 after writing the SBS letter found out that Colvin Grannum, Ken Adams and Robert Walsh are Board Members of NYC Workforce Investment Group documented by the meeting minutes roster.

156.　That as a matter of public record in the matter of State Supreme Court, more than ever before now have a taste of the experience, in the provision of justice there in 2nd Judicial District beyond all the bad press with Clarence Norman fixing Judgeships and the Judicial Nominating convention process now before the U.S. Supreme Court; and more so given the fact that HUD Federal money is involved that makes any hearing a Federal matter

157.　That during 1994 thru the present Forest City Ratner worked with the NYS Office of Real Property Services and the NYS Empire Development Agency with Charles Gargano in the Harlem Enterprise Zone program was given a piece of property for $1 on 125th Street for the construction of a commercial office building, that then was leased back to a special purpose entity with a lucrative 30 year lease and at which Congressman Charles Rangel arranged for President Clinton to have his office suite starting in 2000, and that such arrangement involved aiding the Shabazz Market in Harlem unlike here in Bedford Stuyvesant on Fulton Street.

158.　That the Enterprise Defendant on or about 1997 relocated residents of Harlem into Housing sponsored by Assemblyman Boylan using LIHTC in BCB #3.

159.　That the NYC owned real property referenced used for the project associated with paragraph 158 was hidden from public record except under the control of BCB #3 and when the time was right used with HUD to help insider use of LIHTC for unjust enrichment;

160.　That Enterprise Defendants operate here in Community Board #3 and Board #8 near the Atlantic Yards Project using insider politics outside of public view or participation or ability

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

to influence as the records show, Councilman Al Vann who is disinterested to help Plaintiffs

benefits from real property investment similarly with the published statements of

Assemblywoman Robinson and even Congressman Ed Towns gets campaign contributions

from Colvin Grannum; and

161.    That Colvin Grannum votes in New Rochelle where he lives but is giving money for

BSRC to the local Congressman, from 3/16/04 thru 11/021/06;

162.    That Plaintiffs Thomas, Strunk and Guilavigui have been self employed and are in privity

with a class of all those citizens and resident aliens here and without any social safety net

available in competition for work otherwise taken by illegal aliens at both lower rates and off

the books and would be instantly unemployed as with the other vendors with few exceptions

and destitute as a result of Enterprise Defendant harboring of illegal aliens targeting

communities of color.

163.    That the Enterprise Defendant especially in conjunction with the FRBNY and Goldman

Sachs Urban Fund operate to take advantage of the extreme weakness and inequity caused

by our national tax system with 25% of every dollar of goods produced being uncompetitive

here and internationally (see fairtax.org ) profiteer with inequitable use of LIHTC;

164.    That the Enterprise Defendant maintain the present tax structure that builds into

production the tax cost at sale that left unresolved has resulted in corporate decisions that

have outsourced our jobs and production to the benefit of a few international corporate

structures coordinated through the Federal Reserve and in which insiders as part of the

Enterprise loot targeted Brooklyn Communities as selectively done elsewhere in NYC

for real property sale internationally as a commodity to bail out insiders while at the same

time the process steals our country, our living standard, liberty and our children's future.

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

165.   That the Enterprise Defendant doing the looting is under the control of the Federal

Reserve and think tanks like the Rockefeller Foundation that are doing the backroom deals

for the financial houses bundling mortgages and investment trusts secured by real property.

166.   That in Brooklyn, where the rubber meets the road the little guy is getting squashed and

transplanted by the Enterprise Defendant's harboring of illegal aliens used as a battering ram

not only to depress citizen labor rates, but to manipulate and inflate the cost of real property

market value or vice versa depending upon the circumstance of investment outcome desired;

167.   That the Enterprise Defendant's activities include use of governmental authority

including that of HUD, in the process that have run ruff-shod to restructure communities

without any bottom-up local home rule say in the whole mess.

168.   That the Enterprise Defendant use harbor of illegal aliens with impunity despite the

requirement of Congress and settled law in 2nd Circuit as of the *case National Council of La*

*Raza v. Department of Justice* Docket 04-5474-cv that the State enforcement of Federal Law

do have the power to arrest both criminal and civil violation of illegal entry into the country

without a warrant; and so without stretching any point with copious statistics readily

available by the Bureau of Census in 2005 on illegal aliens, and where they are, is well-

documented public record that Plaintiffs state on information and belief:

169.   Then Federal Reserve Bank Chairman Alan Greenspan as official policy lauded the

influx of Illegal aliens and immigration as necessary and beneficial for the economy.

170.   That a long line of NYC Mayors starting with Edward L. Koch have used the policy of

*"Don't ask and Don't Tell"* in the matter of enforcement, despite the requirement of

Congress with plenary authority over aliens and immigration per se that the state enforce

federal law as a compelling state interest.

Case 1:07-cv-01171-ARR-LB  Document 13  Filed 05/01/07  Page 38 of 44

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

171.    The fact is that there is a clear well established pattern of conduct by the racketeering

Enterprise Defendant here in NYC regarding harboring with impunity, and although the

municipal government is at the center, the Enterprise Defendant uses illegal aliens to impact

targeted communities in decision made for unjust enrichment; and as aliens are incarcerated

in State Prison points to facts that must be put before this Court in the matter of malicious

facilitating of harboring in the presence of illegal aliens in NYC.

172.    As further example of the *"Don't ask Don't Tell"* policy especially after the horrors of

9-11 still not adequately investigated, shows that illegal aliens continuing since no later than

the 1980 Federal Census started with Mr. Edward I Koch done as a continuous unbroken

pattern of felonious conduct harboring and facilitating illegal aliens through the present

Mayor Michael Bloomberg.

173.    That Mayor Bloomberg publicly expresses personal concern for illegal aliens as done on

WABC radio recently, purportedly because of his fears that without illegal aliens grooming

his membership and use of country club greens, may somehow threaten his golf game, does

not negate the fact that U.S. Citizens from the inception of this nation are quite capable of

doing dirty work and as plaintiffs have done personally and are now willing to do without the

interference by the Enterprise Defendant with a living wage, as Plaintiffs  do hang sheetrock,

have cleaned out septic tanks, have picked crops and cut grass, despite the Mayor's

rationalization otherwise is a rouse to cover-up for the Enterprise Defendant.

174.    That given his latest admissions under oath Mr. Bloomberg before a Senate Committee

needs to be a Defendant herein Racketeering matter before this Court review as prima facie

evidence of breach of his Fiduciary duty in very much the same was as for the factual

allegations against Mr. Spitzer role to harbor and flout harboring law as NYSAG both are

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

ultra vires failing in their fiduciary duty to U.S. Citizens and resident aliens in New York.

175.   Mayor Bloomberg on 5 July 2006 testified under oath at the US Senate Judiciary

Committee hearings on so-called Immigration reform with Mr. Specter presiding in

Philadelphia.

176.   Mayor Bloomberg testified under oath that HE had and has direct knowledge on the retail

and wholesale provision of false documents and harboring with intent to commit a felony in

NYC and that he has not done nor will assist Homeland Security in preventing such crimes

complained of herein by me and other Plaintiffs as a class similarly situated being injured by

not only the violation of the State Constitution but by substantive racketeering acts being in

effect no different had they been done by agents of Tyson Foods and or Mohawk Industries

both are mild examples of an *Ultra Vires*  compared to what the Enterprise Defendant is

doing by fraud to injure and target Plaintiffs and U.S. Citizens specifically

177.   Further the Associated Press on 5 July 2006 repeated Mayor Bloomberg's hubristic

statements as a slap to the face of all U.S. Citizens and plaintiffs, is treason against the nation

as a whole, and shows how entrenched the Enterprise Defendant is and how long it has been

operating with impunity, to wit Mayor Bloomberg said New York City is home to more than

3 million immigrants (which is not at issue herein) and that a half-million of them came to

the country illegally, said:

> *"Although they broke the law by illegally crossing our borders ... our city's economy*
> *would be a shell of itself had they not, and it would collapse if they were deported,"*
> *Bloomberg said. "The same holds true for the nation."*

178.   That Based upon the foregoing facts and public record Plaintiffs and those similarly

situated as a class in the Community Boards of #3 and #8 have suffered palpable and direct

injury and loss of proprietary property by operation of the Enterprise Defendant requiring

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

treble damages and equity relief from this Court.

179.   Wherefore Plaintiffs prayer of the Court for relief includes an order:

a.   A special master review of the extent of the injury to communities

b.   An injunction on further use of LIHTC in NYC

c.   An injunction prohibiting further harboring of illegal aliens

d.   Piercing the Corporate veil of all public, quasi public and private entities associates

with the Enterprise Defendant;

e.   An order of the US Attorney to investigate and report to the Court all findings

f.   A jury trial on damages

g.   Punitive Treble damages

h.   That Defendants are to reimburse the expenses of this action proportionally;

i.   And for such other and different relief as the court deemed necessary.

Respectfully submitted by Plaintiffs:


Dated:   30th April 2007          /s/
         Brooklyn New York
                                 JAH THOMAS, pro se


Dated:   30th April 2007          /s/
         Brooklyn New York
                                 BASIL GUILAVIGUI, pro se


Dated:   30th April 2007          /s/
         Brooklyn New York
                                 CHRISTOPHER EARL STRUNK, pro se


Amended Complaint page 40 of 44

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

### Affidavit of Verification of the Amended Complaint

STATE OF NEW YORK  )

                           ) ss.:

COUNTY OF KINGS      )

**Accordingly**, I, JAH THOMAS, being duly sworn, depose and say under penalty of perjury:

That I am also known as Florent Mathurin and am herein pro se without being and attorney;

That I am naturalized Citizen registered to vote at 421 Monroe Street Brooklyn New York within

Brooklyn Community Board #3, and have my place of business located at 17 Albany Avenue

Brooklyn New York 11216 in the Fulton at Albany Cooperative Market; and that my telephone

number is 646-229-3176 and Email: Florent_Mathurin@yahoo.com

That I have read the foregoing amended complaint with Four Counts of complaint against

defendants as it applies to me personally and directly variously requiring a restraint, preliminary

injunction declaratory equity relief and jury trial on the facts and damages and other and

different relief deemed just, and know the contents thereof; the same is true to my own

knowledge, except as to the matters therein stated to be alleged on information and belief, and as

to those matters I believe it to be true. The grounds of my beliefs as to all matters not stated upon

information and belief are as follows: 3rd. parties, books and records, and personal knowledge.

 

                                    _Jah Thomas_
                                  **Jah Thomas**

Sworn to before me this
28TH day of April 2007

_____

**NOTARY PUBLIC**

MAX DESPEROT
NOTARY PUBLIC  State of New York
No 01DE6052996
Qualified in Queens County
Commission Expires 6/11/07

Amended Complaint page 41 of 43

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

### Affidavit of Verification of the Amended Complaint

STATE OF NEW YORK  )

                          ) ss.:

COUNTY OF KINGS      )

Accordingly, I, BASIL GUILAVIGUI, being duly sworn, depose and say under penalty of perjury:

Am herein pro se without being and attorney; and that I am a resident alien desiring to become a United States Citizen and become eligible to vote within his Brooklyn Community Board 1373 Sterling Place Apt 11B Brooklyn New York 11213 within Community Board #8, and have my place of business located at 17 Albany Avenue Brooklyn New York 11216 in the Fulton at Albany Cooperative Market and that my telephone number is 718-735-6646 and Email: bguilao@yahoo.com

That I have read the foregoing amended complaint with Four Counts of complaint against defendants as it applies to me personally and directly variously requiring a restraint, preliminary injunction declaratory equity relief and jury trial on the facts and damages and other and different relief deemed just, and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe it to be true. The grounds of my beliefs as to all matters not stated upon information and belief are as follows: 3rd. parties, books and records, and personal knowledge.

_____
BASIL GUILAVIGUI

Sworn to before me this
30th day of April 2007

_____
NOTARY PUBLIC

CLINTON B. BROWNE
Notary Public, State of New York
No. 01BR5059433
Qualified in Kings County
Commission Expires April 29, 2010

Amended Complaint page 42 of 43

Thomas et.al. v. The Federal Reserve Bank of New York et.al. EDNY 07-cv-1171

## Affidavit of Verification of the Amended Complaint

STATE OF NEW YORK )
                    ) ss.:
COUNTY OF KINGS     )

**Accordingly**, I, CHRISTOPHER EARL STRUNK, being duly sworn, depose and say under

penalty of perjury:

That I am herein pro se without being and attorney; am a native citizen born in the Borough of

Manhattan and registered to vote at 593 Vanderbilt Avenue #281 Brooklyn New York 11238,

within Brooklyn Community Board #8 and am in privity with all eligible voters in the City of

New York, and am self employed and a customer at 17 Albany Avenue Brooklyn New York

11216 in the Fulton at Albany Cooperative Market; and that my telephone number is 631-745-

6402 and Email: uncasvotes2@yahoo.com.

That I have read the foregoing amended complaint with Four Counts of complaint against

defendants as it applies to me personally and directly variously requiring a restraint, preliminary

injunction declaratory equity relief and jury trial on the facts and damages and other and

different relief deemed just, and know the contents thereof; the same is true to my own

knowledge, except as to the matters therein stated to be alleged on information and belief, and as

to those matters I believe it to be true. The grounds of my beliefs as to all matters not stated upon

information and belief are as follows: 3rd. parties, books and records, and personal knowledge.

**CHRISTOPHER EARL STRUNK**

**Sworn to before me this**
**28th day of April 2007**

**NOTARY PUBLIC**

MAX DESPEROT
NOTARY PUBLIC State of New York
NO 01 DE60 33996
Qualified in Queens County
Commission Expires 6/11/07

Amended Complaint page 43 of 43